[No. B050684. Second Dist., Div. Three. Mar. 17, 1992.]

SALOMON LEVY, Plaintiff and Appellant, v.
TOYOTA MOTOR SALES U.S.A., INC., et al., Defendants and
Respondents.

COUNSEL

Taylor & Hodges, A. Clifton Hodges, Norman F. Taylor, Michael Charles Jochum and H. Peter Young for Plaintiff and Appellant.

Bronson, Bronson & McKinnon, Ralph S. LaMontagne, Jr., Sheldon J. Warren and Eric A. Amador for Defendants and Respondents.

OPINION

DANIELSON, J.—Plaintiff and appellant Salomon Levy (Levy) appeals from the order granting the motion to tax costs brought by defendants and respondents Toyota Motor Sales U.S.A., Inc., and Hollywood Toyota, following entry of judgment in favor of Levy and against respondents in the amount of $22,619.52, in an action for breach of express and implied warranties, violation of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (15 U.S.C. § 2301 et seq.) (Magnuson-Moss Act), violation of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) (Song-Beverly Act), and rescission of contract. Levy sought costs in the amount of $142,002.95; he was granted $33,412.54. The trial court also denied his request for additional attorney fees incurred in conjunction with the motion to tax costs. We affirm.

FACTS

In his complaint, Levy alleged that in November 1987, he purchased a 1988 Toyota from Hollywood Toyota for $17,448 The vehicle was distributed by Toyota, and was expressly warranted to be free from defects. After driving the vehicle for 4,277 miles, Levy discovered the brake components were defectively manufactured, designed or assembled. His attempts to

revoke the purchase contract and obtain reimbursement of the money he paid for the vehicle, or in the alternative to obtain a replacement vehicle, were refused by the defendants. Levy claimed this refusal constituted a breach of the express warranty, and that he was consequently damaged in the sum of $17,448. He named as defendants both of the present respondents, as well as Tokai Credit Corporation (Tokai), who financed his purchase.

In December 1989, following a two day arbitration hearing, an award was entered in favor of respondents; Levy requested a trial de novo in the superior court.

Prior to trial, Levy and Tokai entered into a settlement agreement providing, inter alia, that each was to bear its own costs and fees.

Trial of the action against the remaining defendants, respondents herein, commenced before a jury on March 7, 1990. On March 16, 1990, judgment was entered awarding Levy $17,619.52 in actual damages, plus a $5,000 civil penalty for willful failure to comply with the obligations of the Song-Beverly Act (Civ. Code, § 1794, subd. (c)), for a total award of $22,619.52.

In his memorandum of costs, Levy sought $114 for filing and motion fees, $991.14 in jury fees, $975.40 in deposition costs, $75 for service of process, $282 for models, blowups and photocopies of exhibits, $2,106.41 for "other" costs, and $137,459 as attorney fees.

Respondents filed a motion to tax costs, requesting the trial court to strike or substantially reduce several items. They requested reduction of (1) the claimed $75 for service of process to $50, on the ground that $25 was incurred in prosecuting the action against Tokai, who was dismissed as a defendant; (2) the $137,459 claimed for attorney fees to not more than $25,000, on the grounds that the fees were unconscionable, unreasonably incurred, based on unrealistic billing rates, and inflated by improper application of the "private attorney general" theory; (3) the $282 claimed as costs for models, blowups, and photocopies of exhibits, and (4) $2,106.41 claimed as "other" expenses, on the ground these items appeared to reflect certain costs that are not provided for under Code of Civil Procedure section 1033.5. Respondents urged that only $122.16 should be awarded with respect to these items.

At the hearing on the motion to tax costs, the trial court reduced Levy's claim of attorney fees to $30,000, his costs for service of process to $50,

and the other disputed costs to $1,000, allowing him costs in the total amount of $33,412.54.[1]

## CONTENTIONS

Levy contends the court erred in (1) disallowing the costs of service of the summons and complaint on Tokai; (2) failing to determine the actual time expended, and the appropriate hourly rate to be applied, to the various personnel rendering legal services to Levy, and comparing the fee request with the award of damages in the underlying case; (3) reducing the amount awarded for "other" costs; and (4) denying an additional award of attorney fees incurred in opposing the motion to tax costs.

## DISCUSSION

In his brief on appeal, Levy relies on the costs provisions of both the Song-Beverly Act and the Magnuson-Moss Act. While the Acts contain similar provisions for recovery of costs and expenses, in our case the jury found only that respondents "wilfully failed to comply with the obligations of the Song-Beverly Act or the terms of any express warranty."

---

[1]The court stated:

"Now I'll state my reasons for the record. There is a growing practice in this community of which I am aware, for attorneys to take advantage of cases in which attorney's fees are permitted by statute.

"In those cases, there is a growing practice for attorneys to exaggerate the amount of their fees, because they realize that they are going to be awarded attorney's fees. The fees are never computed in these cases until after there has been a determination which would permit the award of attorney's fees.

"Clients are never billed for these amounts until after there is a determination which ensures that attorney's fees will be paid. I find that the items that are submitted in support of attorney's fees in this case are grossly exaggerated. I do not believe these items.

"I base my decision also upon the fact that I have had 38 years of experience in the litigation field. This is a case which required five days of counsel's time to try, plus three days of jury deliberations, plus an arbitration hearing—a total, at most, of counsel's time of 10 days.

"The award in this case was a total of $22,000. If this case were handled on a contingency fee basis, the attorney's fees would be in the neighborhood of $8,000; 8 to $10,000.

"Mr. Levy had an excellent recovery in this case. He had the use of an automobile to put 30,000-plus miles on it. He got an award which reimbursed him for the total costs of the purchase, plus he had a settlement of his claim against the lienholder, reducing the amount. So Mr. Levy has done very well in this case, not to mention a $5,000 penalty.

"I cannot imagine that any attorney could represent to his client that he was going to charge the client $137,000 for a $22,000 recovery. But that's basically what is being said here, that this client is—has been rendered 132—$137,000 worth of attorney's services in this case.

"I believe that the fees are grossly exaggerated. I base my determination upon my experience and knowledge in many years in the litigation field and upon my determination that the amount of the fees [is] grossly exaggerated.

"That will be my ruling."

The Song-Beverly Act provides, in Civil Code section 1794, subdivision (d): "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, *determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.*" (Italics added.)

■ It is true, as Levy contends, that the language of the act is mandatory, providing the buyer "shall" recover costs, including attorney fees. However, the statute requires payment only of those costs and fees "determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution" of the underlying action.[2] We therefore review the trial court's order taxing costs under the abuse of discretion standard. (E.g., *Posey* v. *State of California* (1986) 180 Cal.App.3d 836, 852 [225 Cal.Rptr. 830].)

*Service of Summons and Complaint on Tokai*

■ Levy complains of the trial court's deduction of $25 attributable to service of the summons and complaint on Tokai, from the costs he claimed for service of process. The record indicates only that Tokai was dismissed from the action prior to trial pursuant to a settlement agreement with Levy providing that each of the parties thereto was to bear his own costs. "[O]ne unsuccessful defendant has been held not liable for costs incurred by a second defendant who was successful against the plaintiff, where the unsuccessful defendant neither brought the successful one into the case, nor was responsible for the plaintiff having named the successful defendant as a party. [Citations.]" (*Transamerica Title Ins. Co.* v. *Green* (1970) 11 Cal.App.3d 693, 704 [89 Cal.Rptr. 915, 44 A.L.R.3d 543].) Although our case involves settlement of the action against Tokai, under the foregoing standard respondents are responsible only for those costs reasonably incurred by Levy in connection with the commencement and prosecution of the underlying action against them.

*Attorney Fees*

With respect to the award of attorney fees, Levy relies on *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303], in urging that

---

[2]Similarly, Code of Civil Procedure section 1033.5 provides in subdivision (c) that allowable costs "shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation," and in addition, that such costs "shall be reasonable in amount."

the trial court was obligated to determine a "touchstone" or "lodestar" figure based on a compilation of the time spent and reasonable hourly compensation for each attorney and paralegal involved in the presentation of the case, and then increase or reduce that figure by application of a "multiplier" after taking into consideration other factors concerning the lawsuit. (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321-324 [193 Cal.Rptr. 900, 667 P.2d 704].) *Serrano* had to do with the procedure to be followed in awarding attorney fees under the private attorney general doctrine. (Code Civ. Proc., § 1021.5.)[3] ■ To obtain an award of fees under the doctrine, "one must be a successful party in an action resulting in the enforcement of an important right affecting the public interest." (*Crawford* v. *Board of Education* (1988) 200 Cal.App.3d 1397, 1405 [246 Cal.Rptr. 806].) The doctrine "was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." (*Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 114 [212 Cal.Rptr. 485].)

■ While the Song-Beverly Act is obviously designed to protect the public interest, it does not follow that every action brought thereunder will meet the standard set forth in Code of Civil Procedure section 1021.5. We find nothing in the present record to indicate that Levy is entitled to an award of attorney fees pursuant to the private attorney general doctrine.

■ Levy contends the "touchstone" or "lodestar" method must be applied to all attorney fee awards regardless of the statute or theory upon which the award is based. For example, in *Aetna Life & Casualty Co.* v. *City of Los Angeles* (1985) 170 Cal.App.3d 865 [216 Cal.Rptr. 831], the court considered the propriety of an award of fees in an inverse condemnation case. Code of Civil Procedure section 1036 provides for an award in such a case of "such sum as will, in the opinion of the court . . . reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding." Citing *Serrano* v. *Priest, supra,* 20 Cal.3d 25, the court stated: "The reasonableness of attorney fees is generally determined by consideration of, among other things, the number of hours spent on the case,

---

[3]The *Serrano* rule is codified at Code of Civil Procedure section 1021.5, which provides: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

reasonable hourly compensation for the attorney, the novelty and difficulty of the questions involved, the skill displayed in presenting them, the extent to which the litigation precluded other employment by the attorney, and the contingent nature of the fee award." (*Aetna Life & Casualty Co.* v. *City of Los Angeles, supra,* 170 Cal.App.3d at pp. 880-881.) The court also stated: "The starting point of every fee award must be a calculation of the attorney's services in terms of the time he has expended on the case. (*Serrano* v. *Priest, supra,* 20 Cal.3d at p. 48, fn. 23.) Anchoring the analysis of reasonableness to this concept is the only approach that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts. (*Ibid.*)" (*Aetna, supra,* 170 Cal.App.3d 865, 881; see also *Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 953 [218 Cal.Rptr. 839], noting that *Serrano* cited *City of Detroit* v. *Grinnell Corporation* (2d Cir. 1974) 495 F.2d 448, 470, concerning an award of attorney fees in an antitrust case.)

In *Aetna,* the trial court approved a contingent fee of 20 percent of the gross amount awarded to plaintiffs, which included damages, prejudgment interest, and all costs of the suit, including court costs, expert witness fees and attorney fees already figured as 20 percent of the gross award. (*Aetna, supra,* 170 Cal.App.3d at p. 880.) On appeal, the court determined that although the percentage basis of the award seemed low by comparison with other typical contingent fee arrangements, the actual amount was quite high in absolute terms and in relationship to the hours worked. In addition, the method used to compound the fee was improper, in that it imposed a surcharge of 20 percent by plaintiffs' attorneys upon all elements of the gross award, which already contained an award of attorney fees, costs and expert witness fees. (*Id.* at p. 881.) The matter was remanded for redetermination of fees.

Our case did not involve a contingent fee arrangement. The itemized statement of Levy's counsel showed 4 attorneys and 5 paralegals associated with his firm billed 427.10 hours to Levy's case. In some instances, attorneys billed 13 to 16 hours per day. Some of the charges were duplicative, and others incurred for unnecessary and/or unsuccessful motions. As respondents point out, almost $6,000 was billed for travel time. One of the paralegals billed for court appearances as well as travel time to and from court.

Paralegal time was billed at either $100 or $125 per hour; attorney time was billed at either $175 or $210 per hour.

There is nothing in any of the cases cited by Levy or found by us abrogating the trial court's discretion in setting attorney fees. The person

seeking such an award "is not necessarily entitled to compensation for the value of attorney services according to [his] own notion or to the full extent claimed by [him]. [Citations.]" (*Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist., supra,* 172 Cal.App.3d 914, 950.)

Levy had the burden of showing that the fees incurred were "allowable," were "reasonably necessary to the conduct of the litigation," and were "reasonable in amount." Although the trial court found the items submitted in support of the fee claim were grossly exaggerated, there is nothing in the record indicating how the court arrived at the amount of the award ultimately made. In the circumstances, we must presume the court, using its sound discretion, found the sum awarded reasonably incurred and reasonable in amount. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) We find no abuse of discretion in the trial court's determination that $30,000 was a reasonable fee to prosecute this action based on faulty brakes installed in a 1988 Toyota.

*Other Costs*

In his memorandum of costs, Levy listed "other expenses authorized by statute and case law per declaration" totalling $2,106.41. No mention is made of this item in the supporting declaration of Michael Charles Jochum, Levy's attorney.

In their motion to tax costs, respondents requested deletion of all costs of word processing and secretarial work, photocopying, travel and parking, expert inspections, telefaxes, and messenger service. These items total over $2,000.

In opposition to the motion, Levy argued that "[o]ut-of-pocket expenses of litigation which are normally billed to the client and not included in the overhead component of the attorney's hourly rate are recoverable"; he urged, specifically, that word processing and secretarial expenses are allowable.

■ "If the items on a verified cost bill appear proper charges, they are prima facie evidence that the costs, expenses and services therein listed were necessarily incurred. [Citations.] Where the items are properly objected to, they are put in issue, and the burden of proof is upon the party claiming them as costs. [Citation.]" (*Rappenecker* v. *Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 266 [155 Cal.Rptr. 516].)

In our case, Levy offered no substantiation of the challenged charges in response to respondents' objections. Nothing in the record indicates which of

his claimed expenditures were allowed, reduced, or disallowed, or how the court arrived at its determinations. As was the case regarding attorney fees, we cannot say the trial court abused its discretion in taxing these costs. We therefore presume the court, in its sound discretion, found that the charges were excessive, and should be reduced to $1,000. (*County of Kern v. Galatas* (1962) 200 Cal.App.2d 353, 360 [19 Cal.Rptr. 348].)

*Levy's Request For Additional Fees*

Levy complains of the trial court's denial of his request for additional fees in the sum of $4,200 for the services of his counsel in connection with the motion to tax costs. Respondents claim this charge was again inflated, and that Levy's opposition to the motion to tax costs "was nothing more than another 'form' pleading generated by [Levy's] counsel." The latter claim is based on counsel's references to "General Motors Corporation," which was not a party to this action, as well as his claim that respondents cited a certain case not mentioned in their motion.

■ The trial court substantially reduced each of the items challenged by respondents, indicating Levy improperly inflated his claimed costs with respect to each. He "should not be entitled to attorneys' fees incurred opposing a motion to tax costs which were improperly sought." (*State of California v. Meyer* (1985) 174 Cal.App.3d 1061, 1074 [220 Cal.Rptr. 884].) Moreover, the court could reasonably conclude the amounts awarded were adequate to compensate counsel for all of his services, including those relating to the motion to tax costs. (See *Estate of Trynin* (1989) 49 Cal.3d 868, 880 [264 Cal.Rptr. 93, 782 P.2d 232].)

DECISION

The order appealed from is affirmed.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied April 14, 1992, and appellant's petition for review by the Supreme Court was denied June 11, 1992. Mosk, J., was of the opinion that the petition should be granted.